**UNITED STATES of America**

v.

**Joseph MAZZIO et al., Defendants.**

**Crim. A. No. 449–57.**

United States District Court
D. New Jersey.

June 17, 1958.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., by Frederic C. Ritger, Jr., Asst. U. S. Atty., Newark, N. J., for the Government.

Anthony A. Calandra, Newark, N. J., for defendant Mazzio.

WORTENDYKE, District Judge.

Joseph Mazzio and another have been indicted for the possession and concealment of 200 gallons of untaxed distilled spirits, alleged violations of §§ 7206(4) and 7302 of Title 26 of the United States Code. The named defendant has moved, in advance of trial, in accordance with Rule 41(e) of the Rules of Criminal Procedure, 18 U.S.C., for the return and suppression for use as evidence of untaxed alcohol, by said defendant being transported in an automobile operated by him and seized without warrant in the course of such transportation, following the defendant's arrest, also without warrant, by a Special Investigator of the Alcohol and Tobacco Tax Division of the United States Treasury.

The procedure pursued upon this motion was that recommended in United States v. Warrington, D.C.N.D.Cal.1955, 17 F.R.D. 25. Upon the hearing upon this motion, petitioner testified in his own behalf and there was also presented the testimony of the arresting officer.

The evidence disclosed that on the night before October 29, 1957 (the date of the arrest and seizure) the officer, who was then assigned to the territory including the States of Pennsylvania, New Jersey, Delaware and the District of Columbia, received a telephone call from an informant, from whom he had obtained reliable information on several previous occasions, that a panel truck bearing Pennsylvania license number R–1499–R would be travelling north on United States Highway Route 1, in New Jersey, on the following day, bearing a load of alcohol. Upon the information which the officer had received from this informant on prior occasions, he had acted and caused others to act and had found the information to be accurate. The officer's office headquarters were at the time in Philadelphia, but when he received the information referred to he had already planned to drive to the Newark, New Jersey Alcohol and Tobacco Division office the following morning. As he was travelling northerly on Route 1 in the vicinity of Linden, New Jersey, the officer observed a 1949 green and black panel truck, bearing the Pennsylvania license number mentioned by his informant, proceeding in a similar direction upon the same highway. The officer thereupon began to "tail" the truck at a close distance, and while doing so observed that the truck appeared heavy and was equipped with unusually large rear-vision mirrors projecting on long arms from the sides of the vehicle. After the officer had been following this truck for about ten minutes, the vehicle made a right turn into an intersecting street by passing to the left of a tractor-trailer combination. In negotiating the same turn the government car passed to the right of the tractor-trailer rig and came ahead of the suspected truck, whereupon the officer observed that the Pennsylvania vehicle which he had been following, instead of following the Government car, swung to its left into a gasoline station, doubled back into Route 1 and resumed a northerly course thereon. The officer followed, again at close distance, for less than a mile. During this travel the officer could see reflected in the large projecting rear vision mirror of the truck, that the driver of the latter vehicle was making frequent observations to his rear. The Government car overtook the truck, pulled alongside, and indicated to the driver of the truck that he should pull over to the side of the road. The truck driver's attention was attracted by the blowing of the horn of the Government car, and at the intersection of a side street with Route 1 the truck turned right and came to a stop, as did the Government car. The driver of each vehicle alighted and the officer showed his credentials to the truck driver, requesting the latter to exhibit his driver's license. This was done and the officer then requested the truck driver to ask the other person riding with him to alight. Compliance with this request was also made. The officer then stated to both occupants of the truck that he would like to look into the vehicle's interior, whereupon the petitioner removed the keys from the ignition, rejoined the officer and the other truck passenger, and the three of them went to the rear of the truck where the truck passenger remarked "Who set me up?" The petitioner made an unsuccessful attempt to open the back doors of the panel truck, and thereupon the officer suggested that they go to the driver's side of the front of the truck and see what it contained. The truck passenger then made the comment, "You know, we have got stuff on." to which the officer replied "I know it. How many cans?" The truck passenger then turned to petitioner and inquired, "How many have we got?" Petitioner mumbled something in response which, however, was not heard by the officer. Mazzio went to the front of the truck with the others, reached in, pulled out a five gallon can and put it on the ground. The officer opened it, smelled it, inserted his finger in it, tasted the contents and noted that there was no stamp on the can. The taste indicated that the contents was alcohol. The officer then placed both truck occupants under arrest and, by

telephone, summoned additional Treasury agents to assist him. They arrived shortly thereafter.

Mazzio's version of the foregoing events was substantially in accord with that of Special Investigator Fezzio, except in the following respects: Mazzio testified that he had stopped at a gas station on Route 1 to inquire for the location of the Esso Research Center, and learned that it was about a mile up the road. About five minutes later, Mazzio says, he became aware of the presence of a car alongside of him by the sounding of its horn. The driver of the latter car was exhibiting his identification and requesting Mazzio to pull to the side of the road. Mazzio says he complied and was then informed by the other driver that he was under arrest. There was an exchange of identification data, and after the truck driver had displayed his driver's license the announcement of the arrest was made and he was requested to open the back of his truck. Mazzio says that he tried to open the back but was unsuccessful and thereupon they went across the street to a filling station where the telephone call was made to the Newark office. Elsewhere Mazzio admits that after he was told that he was under arrest he was requested to remove a can from the front of his truck, that he obeyed, and that the agent opened it, smelled it and stated that it was alcohol. It was after this episode that the telephone call to the Newark office was made. Mazzio says that he did not give the agent permission to examine the contents of the truck, but admits that no restraint was imposed upon him by the use of hand-cuffs or of a weapon.

It is conceded that no warrant for the arrest of Mazzio or for the search of the truck of which he was in possession or for the seizure of any of its contents was in existence or in the possession of the officer or exhibited by him to Mazzio.

Mazzio admitted that as he drove the vehicle along, he knew that it contained alcohol and that the required taxes thereon were unpaid.

The facts in this case are strongly suggestive of those in Husty v. United States, 1931, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629. The offense charged in the indictment in that case were violations of the National Prohibition Act. The defendants were apprehended while in an automobile and arrested without warrant. Also without warrant the officers searched the automobile and found a quantity of intoxicating liquor which they seized. The evidence on the motion to suppress disclosed that one of the defendants had been known to the arresting officer to be a "bootlegger" for a number of years previously and had been arrested by the officer before for violations of the same Act. On the day of the arrest complained of the officer had received information over the telephone that the defendant had two loads of liquor in automobiles of a particular make and description, parked in particular places on named streets.. The informant was known to the officer, he had furnished similar information to him before, and the information had always been found to be reliable. Believing the information and acting upon it, the officer found one of the cars described at the point indicated, and unattended. Subsequently, the petitioners and a third person entered the car. One of the petitioners started it and was then stopped by the officers. The other two occupants fled and the officers, believing that the car contained intoxicating liquor, searched it and found the whiskey which was the subject matter of the motion to suppress. At page 700 of 282 U.S., at page 241 of 51 S.Ct. of the opinion, Mr. Justice Stone said:

"The Fourth Amendment does not prohibit the search, without warrant, of an automobile, for liquor illegally transported or possessed, if the search is upon probable cause; and arrest for the transportation or possession need not precede the search. [Citing] Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. We think the testimo-

ny which we have summarized is ample to establish the lawfulness of the present search. To show probable cause it is not necessary that the arresting officer should have had before him legal evidence of the suspected illegal act. [Citing] Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032; Carroll v. United States, supra. It is enough if the apparent facts which have come to his attention are sufficient, in the circumstances, to lead a reasonably discreet and prudent man to believe that liquor is illegally possessed in the automobile to be searched."

In United States v. Di Re, 1948, 332 U.S. 581, 68 S.Ct. 222, 224, 92 L.Ed. 210, the evidence sought to be suppressed consisted of counterfeit gasoline ration coupons and the seizure was from the person of the defendant after he had been arrested and taken from the automobile, in which he had been riding with two other persons, to the police station. While holding that the search and seizure there involved was illegal the opinion points out that "The Fourth Amendment does not denounce all searches or seizure, but only such as are unreasonable." Further, in the same opinion, the Court, in discussing the Carroll case, points out that:

> " * * * In view of the strong presumption of constitutionality due to an Act of Congress, especially when it turns on what is 'reasonable,' the Carroll decision falls short of establishing a doctrine that, without such legislation, automobiles none the less are subject to search without warrant in enforcement of all federal statutes. This Court has never yet said so. The most that can be said is that some of the language by which the Court justified the search and seizure legislation in the Carroll case might be used to make a distinction between what is a reasonable search as applied to an automobile and as applied to a residence

or fixed premises, even in absence of legislation."

"We need not decide whether, without such Congressional authorization as was found controlling in the Carroll case, any automobile is subject to search without warrant on reasonable cause to believe it contains contraband. In the case before us there appears to have been no search of the car itself."

The opinion mentions Husty, supra, as of the "progeny" of the Carroll case.

Scher v. United States, 1938, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151, following Husty and Carroll, held not unreasonable a search and seizure without warrant of liquor in and from an automobile after the vehicle had entered a garage appurtenant to a private dwelling to which it had been pursued by Federal officers. These officers acted upon confidential information deemed to be reliable that a Dodge automobile with a specified license plate would be transporting untaxed liquor from a specified dwelling in Cleveland, Ohio. Accordingly, the officers took up positions of surveillance in the vicinity of the building and observed the defendant drive the automobile in question away from the house, apparently heavily loaded. The officers followed until the defendant turned into the garage adjoining his residence. As the defendant alighted, the officer approached, announced his official identity, and stated that he was informed that the car was hauling bootleg liquor. The defendant admitted that he had a little for a party in the trunk of his car. The officer opened the trunk and found 88 bottles in unstamped containers. He arrested the petitioner and seized both car and liquor without a warrant.

The Carroll and Husty cases were also cited in that of Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, in which the motion to suppress evidence related to liquor seized from an automobile without warrant. The evidence on the motion was held sup-

portable of the existence of probable cause. One of the officers had arrested the defendant five months previously for illegal transportation of liquor; he had observed him twice loading liquor into a car; and knew his reputation for hauling liquor. He recognized the defendant and the car, the latter appeared to be heavily loaded, he gave chase, overtook the vehicle and forced it to the side of the road. Upon interrogation, the defendant admitted he had 12 cases of liquor in the car; whereupon the officer searched the car, seized the liquor and arrested the defendant.

Upon the precedents and principles above reviewed, I conclude that the search and seizure disclosed by the evidence upon the present motion was not unreasonable and does not offend the Fourth Amendment to the United States Constitution.

The motion is therefore denied, and an order may be presented in conformity with the views herein expressed.